Tracey L. GOVER, Plaintiff,

v.

SPEEDWAY SUPER AMERICA, LLC, Defendant.

No. C–3–02–77.

United States District Court, S.D. Ohio, Western Division.

Dec. 2, 2002.

James Robert Livingston, Shipman, Dix-
on & Livingston Co., Troy, OH, for Plain-
tiff.

Diane Leslie Gentile, Audrey S. Adams,
Cooper & Gentile Co., Talbott Tower, Day-
ton, OH, for Defedant.

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR REMAND (DOC. # 6); DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 9) SUSTAINED IN PART AND OVERRULED IN PART, SUBJECT TO RENEWAL AFTER THE COMPLETION OF DISCOVERY ON THE ISSUE OF PRETEXT ON PLAINTIFF'S SEX AND PREGNANCY DISCRIMINATION CLAIMS

RICE, Chief Judge.

The instant litigation arises out of the termination of Plaintiff Tracey L. Gover ("Gover") from her employment with Defendant Speedway Super America, LLC ("Speedway"). According to her Complaint (Doc. # 1), Plaintiff was hired by Speedway in January of 1994. Between November of 1997, and May 15, 2001, Plaintiff held the position of Store Manager at the Tipp City store. On May 13, 2001, Gover, who was six months pregnant, was contacted by Ms. Melissa Sorah, the Assistant Manager, because the main safe would not work. According to Plaintiff's affidavit, she contacted maintenance to see when they could fix the safe, but was told they could not come until the following day. Plaintiff then contacted her District Manager, Mr. Brian Brush, to receive his instructions as to what to do. She informed him that she had two safes: one in the floor and one in her office. She said that the floor safe did not have functional keys, but that she would place the money in that safe if it had a slot in the lid, because it was secure and had a security camera on it. She further stated that, if no slot existed, her only choice was to place the funds in her office safe and put on "day lock," meaning it would be only partially secure. According to Plaintiff, Mr. Brush approved of these actions. After finding no functional keys and no slot in the floor safe, Plaintiff paced the funds in her office safe. The following morning, Gover was contacted by the Miami County Sheriff's Department, which informed her that the store had been left open and unattended. The security camera revealed that a store employee had taken the money from the safe and the cashier drawer and had left. Approximately $8,181.00 in company funds was taken. On May 15, 2001, Gover was terminated for "unsecured company funds." Gover alleges that she was terminated, because she was female and pregnant. She further alleges that other employees who were involved in this incident, but were neither female nor pregnant, received a lessor punishment.

On January 23, 2002, Plaintiff initiated the instant lawsuit in the Miami County Court of Common Pleas (Doc. # 1), alleging that her termination violated Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e; the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; and Ohio Revised Code § 4112.02. On February 19, 2002, Defendant removed the action to this Court, alleging that the Court has federal question subject matter jurisdiction (Doc. # 1).

Pending before the Court are Plaintiff's Motion for Remand (Doc. # 6) and Defendant's Motion for Summary Judgment (Doc. # 9). For the reasons assigned, Plaintiff's Motion is OVERRULED, and Defendant's Motion is SUSTAINED in PART and OVERRULED in PART.

I. *Plaintiff's Motion for Remand (Doc. # 6)*

The party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298

U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). This is no less true where, as here, it is the defendant, rather than the plaintiff, who seeks the federal forum. *E.g., Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453–54 (6th Cir.1996). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir.1976). The removing defendant's burden is to prove, by a preponderance of the evidence, that the jurisdictional facts it alleges are true. *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir.1993). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

In her Motion for Remand, Plaintiff acknowledges that she has brought claims that arise under federal law. She argues, however, that her claims may be brought in state court and that she has elected to proceed in that forum. Plaintiff's argument misconstrues removal to federal court. 28 U.S.C. § 1441(a) provides, in pertinent part:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

*Id.* In other words, although a defendant is not required to remove an action to federal court, it has the right to do so, if it so desires, as long as subject matter jurisdiction exists and the defendant has complied with the procedural requirements for removal. *See id.*; 28 U.S.C. § 1446. Herein, Plaintiff has brought claims over which this Court has original subject matter jurisdiction, namely her federal discrimination claims. She has not argued that Defendant failed to comply with the procedural requirements of 28 U.S.C. § 1446 and, therefore, any such argument is waived. *See Page v. City of Southfield*, 45 F.3d 128 (6th Cir.1995) (procedural defects in removal are waivable). Accordingly, Defendant's removal of this action to federal court was proper. Plaintiff's Motion for Remand (Doc. # 6) is OVERRULED.

II. *Defendant's Motion for Summary Judgment (Doc. # 9)*

A. *Standard Governing Summary Judgment Motions*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for tri-

al.")(quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment....") Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a

particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### B. *Merits of Defendant's Motion*

In its Motion, Defendant seeks summary judgment on each of Plaintiff's discrimination claims.[1] The Court notes, as does Plaintiff, that Defendant's Motion was filed six months prior to the discovery deadline of February 14, 2003. Plaintiff has requested an opportunity to complete discovery should this Court conclude that her affidavit is insufficient to withstand Defendant's summary judgment motion. Because Plaintiff has filed an Opposition Memorandum, as a means of analysis, the Court will begin by addressing the merits of Defendant's Motion regarding Plaintiff's *prima facie* case of discrimination. However, as indicated, *infra,* the Court will permit Plaintiff to conduct discovery on pretext prior to ruling on that issue.

### 1. *Plaintiff's Sex Discrimination Claim*

The United States Supreme Court set forth an evidentiary framework in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for analyzing cases alleging workplace discrimination based on circumstantial evidence. Under the *McDonnell Douglas* burden-shifting principle, a plaintiff bears the burden of establishing, by a preponderance of the evidence, a *prima facie* case

of discrimination by demonstrating: (1) membership in the protected class; (2) that she suffered an adverse action; (3) that she was qualified for the position; and (4) that she was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class. *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992)(citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817); *Warfield v. Lebanon Correctional Inst.,* 181 F.3d 723, 728–29 (6th Cir.1999).

Once the Plaintiff establishes a *prima facie* case, an inference of discrimination arises. The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The Plaintiff then assumes the final burden of proving that an employer's articulated nondiscriminatory reason for taking an adverse action towards her was unlawfully pretextual. *See Mitchell,* 964 F.2d at 584, n. 6. She must prove "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge." *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078 (6th Cir.1994); *Burns v. City of Columbus,* 91 F.3d 836, 844 (6th Cir. 1996).

■ With regard to Plaintiff's sex discrimination claim, Speedway argues that Plaintiff was not similarly situated to any

---

**1.** As noted by Defendant, the Sixth Circuit and Ohio courts have recognized that, when interpreting Ohio Rev.Code Ch. 4112, it is appropriate to look to analogous federal statutes, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. *See Wooten v. Columbus, Div. of Water,* 91 Ohio App.3d 326, 334, 632 N.E.2d 605 (1993); *Plumbers & Steamfitters Comm. v. Ohio Civil*

*Rights Comm'n,* 66 Ohio St.2d 192, 421 N.E.2d 128 (1981). Ohio courts have likewise looked to the ADA when interpreting Ohio's disability discrimination law. *See Plant v. Morton Internat'l, Inc.,* 212 F.3d 929, 939 (6th Cir.2000) (citing cases). Accordingly, the Court's analysis under Title VII, the PDA, and the ADA applies equally to Plaintiff's claims under Chapter 4112.

individual and, consequently, she cannot establish that similarly situated individuals were treated differently. Speedway further argues that Plaintiff was terminated after she failed to follow explicit instructions from her District Manager, Mr. Brian Brush, which resulted in monetary loss by the company. Thus, Defendant argues that it had a legitimate nondiscriminatory reason for Plaintiff's discharge.

Defendant does not dispute that Plaintiff is a member of the protected class (female), that she suffered an adverse action (discharge), or that she is qualified for her position. Rather, Defendant asserts that Plaintiff cannot establish the final element of her *prima facie* case. In response, Plaintiff has provided evidence that she was replaced by an individual outside the protected class, *i.e.*, a male. In her affidavit, Plaintiff states that she was replaced by a young man (Gover Aff. ¶ 26). Ms. Susan Lambert, the Assistant Manager of the Tipp City location at the time that Plaintiff was terminated, likewise testified in her affidavit that Plaintiff was replaced by a male. Ms. Lambert stated: "Following Ms. Gover's dismissal as Store Manager, Isaac Strecker (a Manager Trainee) was sent to our store to work immediately after she was fired. Isaac Strecker was placed in charge and his responsibility was running the store." (Lambert Aff. ¶ 2). Ms. Lambert further indicated that when she spoke to Mr. Brush about Mr. Strecker a few days later, Mr. Brush stated that "he had no option, that he had to place Isaac as Store Manager" and that Mr. Fred Khatibi, the Regional Manager, wanted Mr. Strecker running a store (*id.* ¶ 3). Construing this evidence in the light most favorable to Plaintiff, Plaintiff has demonstrated that she was replaced by an individual outside of the protected class. Accordingly, she has presented a *prima facie* case of sex discrimination.

■ In its Motion, Defendant has proffered that Plaintiff was terminated not for discriminatory reasons but, rather, for "unsecured company funds." In order to survive summary judgment, Plaintiff must present evidence to create a genuine issue of material fact that Defendant's proffered explanation is pretextual. In *Manzer*, a case dealing with discriminatory discharge, the Sixth Circuit elaborated on how these methods of challenging the employer's explanation may be satisfied:

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false." *Baxter Healthcare*, 13 F.3d at 1123–24. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." *Hicks*, 509 U.S. at 510, 113 S.Ct. at 2749. As *Hicks* teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.
>
> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's

explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

29 F.3d at 1083–84 (emphasis in original).

■ Herein, Plaintiff argues that she was treated differently than two similarly situated individuals, to wit: (1) Mr. Brush, her District Manager, who was not disciplined for the loss of funds at her store, and (2) Mr. Gary Abner, the Manager of the Troy store, who was "written up" but not terminated for leaving $50.00 of his own money unsecured. Thus, Plaintiff appears to rely on the third *Manzer* test for pretext, *i.e.*, that Defendant's proffered reason is insufficient to motivate the discharge. Under this prong, the court usually looks at other employees outside of the protected class who engaged in substantially identical conduct but were treated differently.

To be similarly situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich [v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998)] (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Exact correlation is not required, however. *See id.* Rather, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'" *Ercegovich*, 154 F.3d at 352 (quoting *Pierce v. Commonwealth*

*Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)); *see also Harrison v. Metro. Govt.*, 80 F.3d 1107, 1115 (6th Cir.1996) (noting that "precise equivalence in culpability between employees" is not required when comparing similarly situated, non-minority employees).

*Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir.2000).

In light of the fact that discovery had not been completed at the time that Defendant's Motion was briefed, the Court concludes that it would be inequitable to grant summary judgment, at this time, on the basis that there exists no similarly situated employees who were treated differently. Information about which individuals might be similarly situated and the extent to which they received discipline, if any, is solely within the possession of Defendant. Accordingly, Plaintiff should be afforded an opportunity to conduct discovery on this issue prior to any ruling on pretext. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's sex discrimination claim is OVERRULED, subject to renewal at the completion of discovery on the issue of pretext.

2. *Pregnancy Discrimination Act Claim*

■ "With passage of the Pregnancy Discrimination Act, Congress amended Title VII to make clear that discrimination on the basis of sex includes discrimination on the basis of pregnancy, by providing protection from discrimination for 'women affected by pregnancy, childbirth or related medical conditions.'" *Raciti–Hur v. Homan*, 1999 WL 331650 (6th Cir. May 13, 1999); 42 U.S.C. § 2000e(k). To establish a *prima facie* case of pregnancy discrimination, using the *McDonnell Douglas* paradigm, a plaintiff must show: (1) that she was a member of a protected class; (2) that she suffered adverse employment ac-

tion; (3) that she was qualified for the given position; and (4) that she was replaced by an individual who is not a member of the protected class. *See Kline v. Tennessee Valley Authority,* 128 F.3d 337, 349 (6th Cir.1997). Alternatively to this fourth element, a plaintiff may show that another employee who is similarly situated in her or his ability or inability to work received more favorable benefits.[2] *Ensley–Gaines v. Runyon,* 100 F.3d 1220, 1226 (6th Cir.1996). As with other Title VII claims, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Plaintiff then must demonstrate that Defendant's reason is pretextual.

Herein, Defendant argues that Plaintiff's pregnancy discrimination claim must fail, because she cannot establish that a similarly situated, non-pregnant individual received preferential treatment. It further notes that she was discharged for a legitimate, nondiscriminatory reason, in accordance with established company policies and procedures. With regard to Plaintiff's *prima facie* case, the Court disagrees. Construing Plaintiff's evidence in the light most favorable to her, Plaintiff has established that she was pregnant, that her employment was terminated by her employer, that she was qualified for her position, and that she was replaced by Mr. Strecker, who, as a male, obviously was not pregnant. Accordingly, Plaintiff

has presented a *prima facie* case of pregnancy discrimination. Turning to pretext, as with Plaintiff's sex discrimination claim, the Court declines to determine, prior to the close of discovery, whether Plaintiff can create a genuine issue of material fact that Defendant's proffered reason for her discharge was pretextual. Having set forth a *prima facie* case of discrimination, Plaintiff is entitled to conduct discovery prior to a ruling on the issue of pretext. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's pregnancy discrimination claim is OVERRULED, subject to renewal at the completion of discovery on the issue of pretext.

### 3. *Americans with Disabilities Act Claim*

With regard to Plaintiff's disability discrimination claim, Defendant asserts that Plaintiff cannot establish that she is an individual with a disability, within the meaning of the ADA. Speedway asserts that the ADA excludes temporary disabilities from its protection and, therefore, pregnancy does not qualify as a protected disability.[3] Plaintiff has not responded to Defendant's argument.

The ADA defines a disabled person as one who: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (2) has a record of such impair-

---

**2.** In *Ensley–Gaines v. Runyon,* 100 F.3d 1220 (6th Cir.1996), the Sixth Circuit made clear that "while Title VII generally requires that a plaintiff demonstrate that the employee who received more favorable treatment be similarly situated in all relevant respects, *Mitchell,* 964 F.2d at 583, the PDA requires only that the employee be similar in his or her 'ability or inability to work.' 42 U.S.C. § 2000e(k)." *Id.* at 1226. In other words, an employee alleging pregnancy discrimination under the PDA need not meet "the same supervisor test" as enunciated in *Mitchell.* Rather, the plaintiff need only demonstrate that another

employee who was similar in her or his ability or inability to work received the employment benefits denied to her. *Id.*

**3.** Defendant notes that some jurisdictions classify pregnancy complications as impairments. However, it argues that Plaintiff never suffered any complications from her pregnancy during her employment at Speedway and, therefore, this standard is inapposite. Upon review of Plaintiff's affidavit, there is no indication that she suffered any complications during her pregnancy.

ment, or (3) does not have an impairment, but is regarded as having one. 42 U.S.C. § 12102(2); *Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 810 (6th Cir.1999); *Ford v. Frame,* 3 Fed.Appx. 316 (6th Cir. 2001). The term "major life activities" includes activities such as walking, working, sitting, standing, lifting and reaching. *Penny v. United Parcel Serv.,* 128 F.3d 408, 414 (6th Cir.1997); 29 C.F.R. § 1630.2(i). The Supreme Court made clear that reproduction is a "major life activity," within the meaning of the ADA. *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (individual with HIV was disabled, because she had a physical impairment which substantially limited the major life activity of reproduction).

Although the Sixth Circuit has yet to address whether pregnancy itself is a disability, the majority of courts which have faced the issue have concluded that, by itself, pregnancy is not a disability within the meaning of the ADA. *E.g., Minott v. The Port Authority of N.Y. & N.J.,* 116 F.Supp.2d 513, 525 (S.D.N.Y.2000); *Farrell v. Time Serv., Inc.,* 178 F.Supp.2d 1295, 1298 (N.D.Ga.2001); *Villarreal v. J.E. Merit Constructors, Inc.,* 895 F.Supp. 149, 152 (S.D.Tex.1995); *Tsetseranos v. Tech Prototype, Inc.,* 893 F.Supp. 109, 119 (D.N.H.1995). This approach comports with Sixth Circuit and Supreme Court authority, which has held that, to be disabling, the medical condition causing the limitation of a major life activity must be permanent, not temporary. *See, e.g., Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002); *Hein v. All America Plywood Co., Inc.,* 232 F.3d 482 (6th Cir.2000). In its Interpretative Guidance for Title I of the ADA, the Equal Employment Opportunity Commission has likewise stated, in its discussion of physical and mental impairments: "Other conditions, such as pregnancy, that are not the result of a physio-

logical disorder are also not impairments." 29 C.F.R. § 1630, App. § 1630.2(h). The Court finds this authority to be persuasive. Because pregnancy, by itself, does not constitute a disability, within the meaning of the ADA, and Plaintiff has not provided any evidence to suggest that her pregnancy was covered by that statute, Defendant's Motion for Summary Judgment on Plaintiff's ADA claim is SUSTAINED.

For the foregoing reasons, Plaintiff's Motion for Remand (Doc. # 6) is OVERRULED. Defendant's Motion for Summary Judgment (Doc. # 9) is SUSTAINED in PART and OVERRULED in PART, subject to renewal at the completion of discovery on the issue of pretext on her sex and pregnancy discrimination claims. In summary, Defendant is entitled to summary judgment on Plaintiff's disability discrimination claims, pursuant to the ADA and Ohio Rev.Code § 4112, on the ground that pregnancy is not a disability within the meaning of those statutes. With regard to Plaintiff's sex and pregnancy discrimination claims (brought pursuant to both federal and state law), Plaintiff has presented a *prima facie* case of discrimination. Because discovery has not yet been completed, the Court concludes that Plaintiff should be given an opportunity to conduct discovery on the issue of pretext, prior to a ruling on that issue. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's federal and state law sex and pregnancy discrimination claims is OVERRULED, subject to renewal at the completion of discovery on the issue of pretext.